1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

                    Plaintiff,

          v.

THOMAS GLASS, et al.,

                    Defendants.

No. C05-2125P

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT

        This matter comes before the Court on: (1) a motion for summary judgment by Plaintiff
Allstate Property and Casualty Insurance Company ("Allstate") (Dkt. No. 17); and (2) a motion for
summary judgment by Defendant Martin Petit (Dkt. No. 20).  Both Allstate and Mr. Petit seek a
declaratory judgment regarding the scope of coverage under an Allstate automobile insurance policy
issued to Ms. Tessa Brewer.

        The Court has reviewed the materials submitted by Allstate and Mr. Petit in connection with
the two pending motions and has heard oral argument from the parties.  Consistent with the Court's
ruling following oral argument, the Court GRANTS Allstate's motion for summary judgment and
DENIES Mr. Petit's motion for summary judgment.  The reasons for the Court's order are set forth
below.

ORDER - 1

1

2                                        **Background**

3        Allstate issued an auto insurance policy (Policy No. 902830522) to Tessa Brewer, who was

4   then a Minnesota resident.  Mr. Brewer is the only named insured on the policy.  Between 2001 and

5   2005, Ms. Brewer lived with Defendant Martin Petit in Minnesota.  Ms. Brewer and Mr. Petit were

6   not married.

7        In early 2005, Ms. Brewer drove to Washington from Minnesota for a visit.  Mr. Petit flew to

8   Washington on February 4, 2005 and joined Ms. Brewer.  Ms. Brewer rented a car from Enterprise

9   Leasing Company ("Enterprise") in Bellingham, Washington and listed Mr. Petit on the rental

10  agreement as an additional driver.  No other additional drivers were listed on the rental agreement.

11       On February 10, 2005, Mr. Petit and Defendant Thomas Glass drove in the rental car to

12  Brewster's Pub in Point Roberts, Washington.  Ms. Brewer was in Bellingham on that date.  When

13  Mr. Petit and Mr. Glass left Brewster's Pub, Mr. Glass drove the rental car.  While driving, Mr. Glass

14  lost control of the rental car and crashed into a tree.  Mr. Petit was seriously injured in the accident.

15       In December 2005, Allstate filed a complaint in this Court against Mr. Glass and Mr. Petit.

16  Allstate seeks a declaratory judgment that Ms. Brewer's Allstate policy provides no coverage to Mr.

17  Glass for the February 10, 2005 accident and that Allstate has no duty to defend or indemnify Mr.

18  Glass for any claims asserted against him by Mr. Petit for his injuries and damages as a result of the

19  accident.  (Dkt. No. 1 at 7).  Mr. Glass did not answer the complaint and an order of default was

20  entered against him on February 17, 2006.  Defendant Petit answered the complaint and asserted a

21  counterclaim against Allstate.  The counterclaim seeks a declaratory judgment that Ms. Brewer's

22  Allstate policy "must provide coverage for Mr. Glass with respect to the February 10, 2005 accident,

23  including any and all claims that have been or will be asserted against Mr. Glass by Petit for the

24  injuries and damages suffered by Petit in the February 10, 2005 accident."  (Dkt. No. 9 at 5).  Allstate

25  and Mr. Petit filed cross-motions for summary judgment on their claims.

ORDER - 2

1

**Analysis**

2  **1.     Applicable Law**

3          Mr. Petit argues that the Court should apply Minnesota law in resolving this dispute.  Allstate

4  argues that Washington law should apply because there is no conflict between Washington and

5  Minnesota law.

6          Ms. Brewer's Allstate policy includes the following choice of law clause:

7          This policy is issued in accordance with the laws of Minnesota and covers property or risks
           principally located in Minnesota.  Subject to the following paragraph, any and all claims or
8          disputes in any way related to this policy shall be governed by the laws of Minnesota.

9          If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which
           coverage applies under this policy happens outside of Minnesota, claims or disputes regarding
10         that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be
           governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto**
11         accident, or other covered occurrence happened, only if the laws of that jurisdiction would
           apply in the absence of a contractual choice of law provision such as this.
12
   (Policy at 17) (emphasis in original).[1]
13
           In a federal diversity action, the court applies the forum state's conflict of law principles.
14
   American Triticale, Inc. v. Nytco Servs., Inc., 664 F.2d 1136, 1141 (9th Cir. 1981).  Washington law
15
   provides:
16
           Before a court will conduct a conflict of law analysis, the party seeking to apply foreign law
17         must show that an actual conflict exists between the presumptive Washington law and the law
           of the foreign state.  An actual conflict exists if the two states' laws produce different results
18         on a legal issue.  If applying the two states' laws would produce the same result, there is a
           "false conflict" and Washington law will presumptively apply.
19
   Alaska Nat'l Ins. Co. v. Bryan, 125 Wn. App. 24, 30 (2004).
20
           In general, Mr. Petit does not maintain that there is a conflict between Washington and
21
   Minnesota law regarding the general principles for interpreting insurance contracts.  However, Mr.
22
   Petit notes that the two states have adopted different rules for interpreting "permissive use" clauses in
23

24  _____

25         [1]  A number of terms in Ms. Brewer's Allstate policy are printed in bold.  When quoting from
   the policy, the Court has reproduced those terms in bold print as they appear in the policy.

ORDER - 3

1  omnibus provisions of insurance policies.  Minnesota follows the "initial permission rule," while

2  Washington follows the "minor deviation" rule.  One Washington court has explained the difference

3  between these rules as follows:

> In general, three possible rules exist for interpreting permissive use clauses in the omnibus
> provision of an insurance policy.  They are: (1) the strict or conversion rule; (2) the initial
> permission rule; and (3) the minor deviation rule.  Under the strict or conversion rule, any
> deviation from the scope of permission, no matter how slight, will defeat liability coverage
> under the omnibus clause.  Under the initial permission rule, once permission is given, it
> extends to any use of the vehicle, even those uses not originally contemplated by the insured.
> Under the minor deviation rule, a material deviation voids the initial permission and precludes
> coverage under the omnibus clause.  A minor deviation leaves the permission unaffected, so
> that the omnibus clause is operative.

9  New Hampshire Ins. Co. v. Myers, 69 Wn. App. 277, 280 (1993) (internal citations omitted).

10  As discussed below, even if Minnesota's "initial permission rule" were applied in this case,

11  Mr. Glass would not be entitled to coverage under Ms. Brewer's Allstate policy for injuries or

12  damages that he may have caused Mr. Petit to suffer in the February 10, 2005 accident.  As a result,

13  the law of Washington state may be applied, since it leads to the same result as the application of

14  Minnesota law.  However, in the interest of providing a thorough analysis, the Court evaluates the

15  issues in this case under the laws of both Washington and Minnesota.

16  **2.      Rules for Interpreting Insurance Contracts Under Washington and Minnesota Law**

17  Under both Washington and Minnesota law, general principles of contract law govern the

18  interpretation of an insurance policy.  Illinois Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792,

19  799 (Minn. 2004); Findlay v. United Pacific Ins. Co., 129 Wn.2d 368, 378 (1996).  The interpretation

20  of policy language is an issue of law for the court to decide.  Glass Serv. Co., 683 N.W.2d at 799;

21  Overton v. Consol. Ins. Co., 145 Wn.2d 417, 424 (2002).

22  When the language of an insurance contract is unambiguous, a court must interpret that

23  language in accordance with its plain and ordinary meaning.  Glass Serv. Co., 683 N.W.2d at 799;

24  Overton, 145 Wn.2d at 428.  Language is ambiguous if it is fairly susceptible to two different but

25  reasonable interpretations.  Glass Serv. Co., 683 N.W.2d at 799; Allstate Ins. Co. v. Peasley, 131

ORDER - 4

1    Wn.2d 420, 424 (1997).  Minnesota and Washington courts both construe ambiguities in insurance

2    contracts in favor of the insured.  Weum v. Mut. Benefit Health & Accident Ass'n, 54 N.W.2d 20, 29

3    (Minn. 1952); Wheeler v. Rocky Mountain Fire & Cas. Co., 124 Wn. App. 868, 872 (2004).

4           Both states adhere to the rule that "the policy of insurance is to be construed liberally in favor

5    of the insured and every reasonable doubt as to the meaning of the language used resolved in his

6    favor."  Weum, 54 N.W.2d at 29; see also Peterson v. Safeco Ins. Co. of Ill., 95 Wn. App. 254, 259

7    (1999) ("the contract should be interpreted liberally in favor of the insured").  Both Minnesota and

8    Washington law also provide that an insurance contract should be interpreted if possible to give effect

9    to all of its provisions.  See, e.g., Auto-Owners Ins. Co. v. Evergreen, Inc., 608 N.W.2d 900, 903

10   (Minn Ct. App. 2003) ("[w]here possible, courts should interpret insurance policies so as to give effect

11   to all of their provisions"); Peterson, 95 Wn. App. at 259 ("we read the insurance policy as a whole,

12   giving force and effect to each clause in the policy").

13   **3.     Coverage under Ms. Brewer's Allstate Policy**

14          Part I of Ms. Brewer's Allstate policy provides:

15          **Allstate** will pay for damages an **insured person** is legally obligated to pay because of **bodily
             injury** or **property damage**.

16
17          Under these coverages, **your** policy protects an **insured person** from claims for accidents
             arising out of the ownership, maintenance or use, loading or unloading of an **insured auto**.

18   (Policy at 6).

19          A.     "Insured Auto" Provision

20          Allstate maintains that the rental car may not qualify as an "insured auto" under the policy

21   while it was used by Mr. Glass.  The policy defines an "insured auto" as follows:

22          **1.     Insured auto** means:

23                  a.     Any **auto** described on the Policy Declarations. This includes the four wheel
                          private passenger **auto** or **utility auto you** replace it with.

24                  * * *

25

ORDER - 5

d.   A non-owned **auto** used by **you** or a **resident** relative with the owner's permission.  This **auto** must not be available or furnished for the regular use of an **insured person**.

(Policy at 7).

The parties agree that the rental vehicle does not fall within the first definition of an "insured auto" under Section 1.a.  However, the parties dispute whether the vehicle comes within the definition under Section 1.d, which provides that a non-owned auto qualifies as an "insured auto" if it is "used" by the policyholder with the owner's permission.

Mr. Petit suggests that under Minnesota or Washington law, Ms. Brewer was "using" the rental vehicle at the time of the accident, despite the fact that she was in another city on February 10, 2005.  He notes that under both Minnesota and Washington law, courts have found that a person may be "using" a vehicle even if he or she was not driving or operating the vehicle.  See, e.g., Kolby v. Northwest Produce Co., 505 N.W.2d 648, 650 (Minn. Ct. App. 1993) (noting that "'Use' of a motor vehicle has a broader meaning than 'operation' of a motor vehicle.");  Wood v. Kok, 58 Wn.2d 12, 15 (1961) (stating that "'use' and 'operation' as used here are not synonymous terms.  A person may be using an automobile yet not operating it.").

However, the Minnesota and Washington cases cited by Mr. Petit to support his argument essentially involved situations where: (1) a non-operator was a passenger in the vehicle and was "using" the vehicle for his "convenience and pleasure" (see Wood, 58 Wn.2d at 15); or (2) a non-operator was "using" the vehicle by exercising control over the movement of the vehicle at the time of the accident, such as instructing the vehicle operator on which directions to take.  See Kolby, 505 N.W.2d at 651-52;  Woodrich Constr. Co. v. Indemnity Ins. Co. of North America, 89 N.W.2d 412 (Minn. 1958);  West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co., 384 N.W.2d 877 (Minn. 1986).  Neither of those situations is present here with respect to Ms. Brewer.  As Allstate observes, "Ms. Brewer did not have exclusive supervisory control over the rental vehicle's movement at the time of

1   the accident and she certainly was not actively controlling or guiding its movement at the time of the

2   accident." (Pl.'s Resp. at 15-16).

3          Therefore, the Court agrees with Allstate's position that Ms. Brewer was not "using" the rental

4   car at the time of the accident and that the vehicle does not qualify as an "insured auto" under Section

5   1.d when it was used by Mr. Glass.

6          B.     "Insured Person"

7          The parties also dispute whether Mr. Glass may be regarded as an "insured person" under the

8   policy.  In relevant part, the policy defines "insured persons" as follows:

9          2.     **Insured Persons**

10                a.     While using **your** insured **auto:**
                         (i)     **you,**
11                       (ii)    any **resident** relative, and
                         (iii)   any other person using it with **your** permission
12
                  b.     While using a **rental vehicle:**
13                       (i)     **you**,
                         (ii)    any **resident** relative,
14                       (iii)   for damages to the **rental vehicle** only, any other person using it with
                                 **your** permission
15
    (Policy at 7).
16
           Allstate argues that because Section 2.b defines who qualifies as an "insured person" while
17
    using a rental vehicle, the definition of an "insured person" in Section 2.b should apply here.  Mr. Petit
18
    argues that the definition of Section 2.a should apply.  In support of this position, Mr. Petit argues that
19
    Allstate did not use specific terms to exclude rental vehicles in the definition of "Insured Persons" in
20
    Section 2.a.  Mr. Petit contends that "Allstate knew how to, and in fact after did [sic], clarify
21
    provisions that did not apply to rental vehicles, and as the draft[er], could easily have added 'other
22
    than a rental vehicle' if it intended that for [Sections] 1.d or 2.a of the Additional Definitions Section.
23
    Allstate's failure to do so creates an ambiguity."  (Def.'s Resp. at 13).
24

25

1    The Court does not find Mr. Petit's argument persuasive.  As noted earlier, both Washington

2    and Minnesota adhere to the rule that an insurance policy should, if possible, be interpreted in a way

3    that gives effect to all of its provisions.  See, e.g., Auto-Owners Ins. Co. v. Evergreen, Inc., 608

4    N.W.2d 900, 903 (Minn Ct. App. 2000) ("[w]here possible, courts should interpret insurance policies

5    so as to give effect to all of their provisions."); Peterson, 95 Wn. App. at 259 ("we read the insurance

6    policy as a whole, giving force and effect to each clause in the policy").  Minnesota law also provides

7    that "[a] court should not adopt a construction of a policy that neutralizes one provision if an

8    alternative construction exists that gives effect to all the policy provisions and is consistent with the

9    parties' general intent."  Landico, Inc. v. Am. Family Mut. Ins. Co., 559 N.W.2d 438, 441 (Minn. Ct.

10   App. 1997).  Similarly, Washington law provides that in construing a contract, "each part, if possible,

11   should be so construed that all partes thereof shall have some effect."  Safeco Ins. Co. of America v.

12   McManemy, 72 Wn.2d 211, 213 (1967).   Finally, "[i]n case of conflict between the general and

13   particular language in a contract the particular controls."  Cement, Sand & Gravel Co. v. Agricultural

14   Ins. Co. of Watertown, 30 N.W.2d 341, 348 (Minn. 1947); see also Foote v. Viking Ins. Co. of

15   Wisconsin, 57 Wn. App. 831, 834  (1990) ("[i]n contracts, the specific provisions control over the

16   general provisions.").

17    Consistent with these principles, the Court finds that the definition of an "insured person" from

18   Section 2.b applies in this case.  The language of Section 2.b is not ambiguous and specifically defines

19   who qualifies as an "insured person" while using a rental vehicle.

20    Under the definition of an "insured person" in Section 2.b, Mr. Glass cannot obtain coverage

21   for injuries or damages that he may have caused Mr. Petit to suffer as a result of the accident.  Section

22   2.b(i) applies to "you," which is defined as "the policyholder named on the Policy Declarations and

23   that policyholder's resident spouse" – categories that Mr. Glass does not fall into.  Section 2.b(ii) does

24   not apply because Mr. Glass is not Ms. Brewer's "resident relative."  Finally, even if Mr. Glass may be

25   regarded as a permissive user of the rental vehicle under section 2.b(iii), that section applies to

1   "damages to the rental vehicle only."  By its terms, this provision does not extend coverage for bodily

2   injuries caused by Mr. Glass while using the rental car, even if Mr. Glass may be regarded as a

3   permissive user of the rental vehicle.

4         C.      Effect of Applying Minnesota's "Initial Permission Rule"

5         The parties also dispute whether Minnesota's "permissive user statute" or Minnesota's "initial

6   permission rule" would apply in this case.

7         Minnesota has adopted a statute that Allstate calls the "permissive user statute."  This law was

8   enacted as Section 170.54 of the Minnesota code[2] and provides that "[w]henever any motor vehicle

9   shall be operated within this state, by any person other than the owner... the operator thereof shall in

10  case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

11  Allstate correctly argues that Section 170.54 cannot apply in this case because: (1) by its terms, the

12  statute only applies to vehicles operated within Minnesota; and (2) the statute imposes vicarious

13  liability on the "owner" of the vehicle, which in this case is Enterprise rather than Ms. Brewer.

14        Mr. Petit states that he is not arguing that Minnesota's "permissive user statute" applies in this

15  case.  Instead, Mr. Petit asserts that he is invoking Minnesota's "initial permission rule," which he

16  claims "applies as part of Minnesota's common law separate from liability pursuant to Minn. Stat. §

17  170.54 and coverage issues under the statute."  (Def.'s Resp. at 7.)  The Minnesota Supreme Court

18  stated the "initial permission rule" as follows in <u>Milbank Mutual Insurance Co. v. U.S. Fidelity &</u>

19  <u>Guaranty Co.</u>, 332 N.W.2d 160 (Minn. 1983):

20        [I]f the owner of an automobile insured by a liability policy containing an omnibus clause
          extending coverage to operators who have permission of the named insured grants another
21        permission to use the vehicle, any violation of a limited scope of permission by the operator,
          short of theft or conversion of the vehicle, will not relieve the insurer from affording to the
22        named insured coverage protecting him against claims made against him by an injured third
          party.
23

24  _____

25        [2] This section was recently recodified at Minn. Stat. § 169.09, subd 5a.

ORDER - 9

Id. at 167.  As noted earlier, Washington courts have not adopted the "initial permission rule," but instead adhere to the "minor deviation rule" in cases where the omnibus provision of an auto insurance policy provides coverage to permissive users.  See New Hampshire Ins. Co. v. Myers, 69 Wn. App. 277, 280 (1993).

Mr. Petit may be correct that the "initial permission rule" may be applied as part of Minnesota's common law, independent of the "permissive use statute" found Section 170.54 of the Minnesota Code.  As Mr. Petit notes, at least one Minnesota court has held that the initial permission rule applied in a case where Section 170.54 was inapplicable the accident occurred outside Minnesota.  See State Farm Mut. Auto. Ins. Co. v. Budget Rent-a-Car Sys., Inc., 359 N.W.2d 673 (Minn. Ct. App. 1984).  Nonetheless, even if Minnesota's "initial permission rule" applies in this case, it would not provide coverage under Ms. Brewer's policy to Mr. Glass for bodily injuries or damages that he may have caused Mr. Petit to suffer.  As discussed earlier, Section 2.b(iii) of Ms. Brewer's policy provides that an "insured person" includes a person using a rental vehicle with Ms. Brewer's permission, but also specifically provides that the provision applies only to "damages to the rental vehicle."  As a result, even if Mr. Glass is regarded as a permissive user of the rental vehicle under Section 2.b(iii), he would not be entitled to coverage under the policy for bodily injuries or damages that he may have caused Mr. Petit to suffer.

**4.    Remaining Argument**

Finally, Mr. Petit suggests that by signing the rental agreement with Enterprise, Ms. Brewer contractually assumed liability for any person driving the rental car.  The rental agreement provided as follows:

> I request owner's permission to allow Martin Petit who is under my control and direction to drive vehicle for me and on my behalf.  I am responsible for their actions while they are driving and for fulfilling terms and conditions of this rental agreement.  Use of vehicle by an unauthorized driver will affect my liability and rights under this agreement.

ORDER - 10

(Dkt. No. 22, Ex. C).  Mr. Petit asserts that "[b]ecause the Rental Agreement imposes contractual obligations on Brewer, and she is an insured person, Allstate must pay damages Brewer is legally obligated to pay because of Petit's bodily injury."  (Def.'s Opening Brief at 20).

Mr. Petit cites no case law in support of this contention and the Court does not find this argument persuasive.  The rental agreement provides that Ms. Brewer is "responsible for [Mr. Petit's] actions while [he is] driving."  In this case, Mr. Petit did not cause any damages while he was driving the vehicle.  Although the rental agreement also provides in vague terms that "use of vehicle by an unauthorized driver will affect my liability and rights under this agreement," it does not state that Ms. Brewer will be held liable for accidents caused by unauthorized drivers such as Mr. Glass.

### Conclusion

For the reasons set forth above, the Court GRANTS Allstate's motion for summary judgment and DENIES Mr. Petit's motion for summary judgment.  The Court finds and declares that Allstate Policy 902830522 issued to Tessa Brewer does not provide coverage for defendant Thomas Glass with respect to the February 10, 2005 accident and that Allstate has no duty to defend or indemnify Mr. Glass with respect to any claims that have or may be asserted against him arising out of or related to the February 10, 2005 accident, including any claims that have or may be asserted by defendant Martin Petit for his injuries and damages as a result of the February 10, 2005 accident.

The Clerk is directed to send copies of this order to all counsel of record.

Dated:   January 16, 2007

s/Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER - 11